EASON OIL COMPANY, Atlantic Richfield Company, James S. Smith, Executor of the Estate of Arnold D. Freese, States Marine Corporation, Crawley Petroleum Company, Texas American Oil Corporation, Union Texas Petroleum Company, Devon Corporation, and P & O Oil Corporation, Appellees–Plaintiffs,

v.

HOWARD ENGINEERING, INC., H. Boyd Howard, Linda Kay Howard, Nathan Bailey, a minor by and through his legally appointed Guardian, Diane Bailey, Lyndra Bailey and Pamela Bailey, Appellants–Defendants.

No. 64926.

Supreme Court of Oklahoma.

May 10, 1988.

James C. Lang, Melinda J. Martin, Sneed, Lang, Adams, Hamilton, Downie & Barnett, Tulsa, and Lloyd Rowland, Rowland and Rowland, Bartlesville, for appellants-defendants.

Clyde A. Muchmore, Richard C. Ford, Judy Hamilton Morse, Crowe & Dunlevy, Oklahoma City, for appellees-plaintiffs.

Richard A. Paschal, Thomas M. Ladner, Hall, Estill, Hardwick, Gable, Collings-worth & Nelson, Inc., Tulsa, for Diamond Energy Co.

OPALA, Justice.

The dispositive issue here is whether the defendants' counterclaim constitutes a separable and unrelated cause of action whose disposition may result in a judgment.[1] We answer in the negative, dismiss the appeal, and hold that the trial court's denial of summary judgment on the counterclaim did not determine an entire cause of action. This is so because the terminated counterclaim is plainly and inextricably interrelated with the unresolved claims being pressed by the plaintiffs.[2] No judgment can be rendered in this case until *all* of the parties' claims will have been decided.

The plaintiff-operator established production from a well authorized by Corporation Commission pooling and spacing orders that created 640–acre gas units in a common source of supply.[3] The Commission later modified the 640–acre order to create four spacing units (160–acre tracts) within every section in the same source of supply.[4]

---

1. "A judgment is the final determination of the rights of the parties in an action." 12 O.S.1981 § 681; see also *Points v. Oklahoma Pub. Co.,* Okl., 672 P.2d 1146, 1147 [1983] and *Reams v. Tulsa Cable Television, Inc.,* Okl., 604 P.2d 373, 376 [1979]. A judgment must determine all issues raised by the pleadings except those which are waived, abandoned at trial or eliminated by pretrial order. *Wells v. Shriver,* 81 Okl. 108, 197 P. 460 [1921] (syllabus 2); *Loy v. McDowell,* 85 Okl. 286, 205 P. 1089, 1091 [1922]; *Foreman v. Riley,* 88 Okl. 75, 211 P. 495 [1923] (syllabus 3); *Hurley v. Hurley, supra* note 12 (syllabus 3); *Bobo v. Bigbee,* Okl., 548 P.2d 224, 226 [1976] and Rule 5(I), Rules for the District Courts, 12 O.S.Supp.1987, Ch. 2, App. When a counterclaim is interrelated with the plaintiff's claim, no judgment is rendered in the case until *all* issues raised by *both* claims have been resolved. *Dennis v. Lathrop,* 204 Okl. 684, 233 P.2d 969, 970 [1951]; *Fowler v. City of Seminole,* 196 Okl. 167, 163 P.2d 526 [1945] and *Hutchison v. Wilson,* 136 Okl. 67, 276 P. 198, 200 [1929].

2. The procedural posture of the claims, showing both the resolved and unresolved issues in the action, is shown in the appendix to this opinion.

3. By the Oklahoma Corporation Commission Order No. 54702, 640–acre gas units for the Mississippian Common Source of Supply were designated in Section 21, Township 22 North, Range 8 West and in 90 other sections in Garfield and Major Counties.

Order No. 133103, which is not in the record submitted for our review, pooled all mineral interests in the source of supply underlying that section. Plaintiff Eason Oil Company was designated as operator. The plaintiffs participated in drilling the well through a joint operating agreement. The defendants, who also participated in the drilling and completion of the well, did so under the pooling order. See footnotes 5 and 6 *infra* for a more detailed description of the interest held by the plaintiffs-appellees and defendants-appellants.

Eason Oil Company drilled and completed the Dierksen No. 1 Well in the Northeast Quarter of the section. The well has produced, and continues to produce, oil and gas from the Mississippian Common Source of Supply.

4. The January 3, 1979 Corporation Commission Order No. 148243 modified prior orders and created 160–acre drilling and spacing units for the Mississippian formation. The effective date of the order, initially stated to be January 1, 1979, was later postponed by a stay to the date of *final appellate disposition.* The Commission's despacing order was affirmed in *Union Texas, etc. v. Corporation Com'n, etc.,* Okl., 651 P.2d 652 [1982], cert. den. 459 U.S. 837, 103 S.Ct. 82, 74 L.Ed.2d 78 [1982].

The despacing order prompted the plaintiffs' suit to quiet title to their leasehold interest and to determine the proper formula for distribution of production revenue to the royalty owners.[5] Some of the defendants[6]—those who hold the majority interest in the newly formed quarter-section unit within which the producing well was drilled—answered with a counterclaim for damages.[7] They viewed the Corporation Commission "despacing" order as increasing their mineral interest in the producing unit and the proportion of production revenue due them from the plaintiffs.

The district court initially rendered a partial summary judgment for the plaintiffs, resolving some of the quiet title issues,[8] and the defendants-appellants then moved for summary judgment on their counterclaim. The district court denied these defendants' quest for summary judgment.[9] They brought this appeal and assert that because the order overruling their motion disposes of the entire counterclaim it should be treated as final and hence appealable.

█ As a general rule the determination of all the issues in an entire cause of action among several stated in a lawsuit results in a judgment.[10] This is so because by force of 12 O.S.1981 § 681[11] judgment is pronounced when *all* the issues between the parties in one entire cause of action have been resolved.[12] The rule is different when "multiple claims" in a case—whether denominated as claims, cross-claims or counterclaims—tender issues that *address* themselves to legal rights derived from *a*

5. The plaintiffs are the operator of the Dierkson No. 1 Well and the owners of oil and gas leasehold interests who executed a joint operating agreement for the drilling of that well.

6. In this case, there appear to be three groups of defendants opposing the plaintiffs' primary claims for quiet title and declaratory judgment: (1) owners (appellants herein) of the majority working interest in the quarter-section unit where the producing well is located; (2) owners of the mineral interest within Section 21, which is leased to other parties in the lawsuit (these defendants are the royalty owners) (3) and the owners of top leases in the quarter-section units in which there is no producing well.

7. The defendants-appellants claim that their leasehold interest in the Dierkson No. 1 Well has increased from 43.6% (with production based on 640–acre spacing) to 74.4% (with production based on 160–acre spacing). They assert that the plaintiffs have damaged them by the difference between the amount they have been paid and the amount they should have received as a result of the Corporation Commission "despacing" order.

8. The district court *initially* rendered a *partial summary judgment* for the plaintiffs, finding that:
    1. it has subject matter jurisdiction to determine who has the right to drill on the lands in question;
    2. the Corporation Commission has exclusive jurisdiction to determine the date its despacing order became final;
    3. the order became effective October 4, 1982, the date the U.S. Supreme Court denied certiorari to review the despacing order (see footnote 4 *supra*);

    4. the despacing order resulted in the temporary cessation of production of the leases within the newly created 160–acre drilling and spacing units that did not have producing wells located thereon;
    5. the leases that are the subject of litigation and cover lands in the newly established 160–acre drilling and spacing units that do not have wells located thereon allow lessees additional time to resume drilling operations after the effective date of the despacing order; and
    6. the effect of the plaintiffs' failure to drill and develop oil and gas interests on the 160–acre units is relevant only to the extent that such failure occurred after the effective date of the Corporation Commission's despacing order.

9. The trial court made the following findings of fact and conclusions of law in its order denying summary judgment on the counterclaim: (1) the "despacing order" did not terminate the rights of working interest owners to share in the production from the Dierkson No. 1 Well if those owners had elected under the pooling order to participate in the drilling and completion of the well by bearing their respective expenses and risks and (2) the effective date of the "despacing order" is the same for all purposes vis-a-vis the parties to this litigation.

10. *Oklahomans For Life, Inc. v. State Fair of Okl.,* Okl., 634 P.2d 704, 706 [1981].

11. See footnote 1 *supra* for the terms of 12 O.S.1981 § 681; see also *Points v. Oklahoma Pub. Co., supra* note 1, and *Reams v. Tulsa Cable Television, Inc., supra* note 1.

12. *Hurley v. Hurley,* 191 Okl. 194, 127 P.2d 147, 150 [1942] and *Methvin v. Methvin,* 191 Okl. 177, 127 P.2d 186, 188 [1942].

*single occurrence or transaction.*[13] In those latter instances *no* judgment will result from the resolution of any single claim. *All interrelated claims* must be decided before judgment will be deemed to have been rendered.[14] Conversely, when none of the multiple claims pressed in the same action is interrelated with another, the trial court's decision determining *all* the issues in a single claim will be deemed to constitute a judgment.[15] The "interrelated claims" rule rests on the principle that issues pressed in multiple interrelated claims cannot be completely decided until *all* of the issues raised *in each* of them stand resolved.

▮ Whenever the trial court's ruling does not culminate in a judgment, its decision is interlocutory. An interlocutory decision—i.e., one made in advance of a judgment—is not appealable unless it (a) fall within a class of interlocutory orders appealable by right[16] or (b) be certified by the trial court for immediate (prejudgment) review because it "affects a substantial part of the merits of the controversy."[17] An order denying a motion for summary judgment is not certifiable for review in advance of judgment.[18]

▮ Our initial task here is to ascertain whether the issues tendered by the defendants' counterclaim and by the plaintiffs' claims pertain to the same transaction or occurrence and are hence legally "interrelated". If so, the disposition of the defend-

ants' summary judgment motion, asserted to have determined their counterclaim, is but interlocutory, and all the decided issues stand below subject to the trial court's power to re-examine before its judgment is rendered in the case.[19]

The multiple claims in controversy below clearly arise from the same occurrence—the Corporation Commission's despacing order. Both sides to this dispute are seeking a favorable interpretation of that order. In their counterclaim the defendants sought (a) to terminate the right of certain working interest owners—owners of mineral interests in the original 640-acre unit but not in the newly formed producing quarter-section unit—to share in the production of the well and (b) to establish the effective date of the despacing order for revenue purposes. The plaintiffs, on the other hand, relying on the same Commission order, pressed for (a) their title to be quieted to the leasehold interests in the original 640-acre unit and a reasonable time to commence drilling of wells in the three newly formed undeveloped quarter-section units, and (b) a declaratory judgment to determine the distribution of production revenue to the royalty owners.

The record clearly shows that even if the decision now brought for our review did determine *all* of the issues raised by the counterclaim, there are still to be resolved interconnected issues tendered by the plain-

**13.** Oklahoma adheres to the single-cause-of-action-for-a-single-occurrence-or-transaction theory. *Retherford v. Halliburton Co.,* Okl., 572 P.2d 966, 968–969 [1978]. Because a single transaction or occurrence *gives rise to but one cause of action,* when multiple claims address themselves to the same transaction or occurrence, no complete resolution of all the tendered issues may be effected until *all* the claims so pressed in the case have been decided.

**14.** *Dennis v. Lathrop, supra* note 1, 233 P.2d at 970; *Fowler v. City of Seminole, supra* note 1, 163 P.2d at 526 and *Hutchison v. Wilson, supra* note 1, 276 P.2d at 200.

**15.** *Oklahomans For Life, Inc. v. State Fair of Okl., supra* note 10.

**16.** 12 O.S.1981 § 952(b)(2); 12 O.S.Supp.1984 § 993; and Part II(b), Rules on Perfecting a

Civil Appeal, 12 O.S.1981, Ch. 15, App. 2; *Chemco Products, Inc. v. Moley Produce Company, Inc.,* Okl., 615 P.2d 300, 301 [1980] and *Lawson v. Boston Chrysler, Ply. & Dodge, Inc.,* Okl., 625 P.2d 1258, 1259–1260 [1981].

**17.** 12 O.S.1981 § 952(b)(3) and Part II(a), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2.

**18.** The pertinent provisions of Rule 1.50, Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2, are:
"* * * No certified interlocutory order shall be considered if taken from an order overruling a motion for summary judgment."

**19.** *Johnson v. Johnson,* Okl., 674 P.2d 539, 543 [1983].

tiffs' claims.[20] The latter stand unresolved and hence prevent a judgment from being rendered.[21] The order before us is intermediate, both in character and effect. It leaves all the parties before the court with the remaining issues in *controversy* yet to be determined. It neither falls within the class of interlocutory orders appealable by right nor can it be certified to this court for review by certiorari because a summary judgment's denial is not certifiable in advance of judgment.[22] In short, the decision brought to us for corrective relief fails to meet the attributes (a) of a judgment, (b) of an order that determines the action and

prevents a judgment[23] or (c) of one that precludes an aggrieved party from proceeding further in the case.[24]

The appeal is dismissed without prejudice to a timely recommencement *after* judgment or final order has been rendered in the case.[25]

HARGRAVE, V.C.J., and HODGES, LAVENDER, KAUGER and SUMMERS, JJ., concur.

SIMMS and ALMA WILSON, JJ., concur in judgment.

DOOLIN, C.J., dissents.

"An order affecting a substantial right in an action, *when such order, in effect,* determines the action and *prevents a judgment* ... is a final [appealable] order...." [Emphasis added.]

---

**20.** The title to the plaintiffs' leases has not been quieted, and the declaratory judgment action to determine the distribution of production revenues to the royalty owners has not been addressed. No decision has yet been rendered that resolves either issue. See appendix to this opinion showing both the resolved and unresolved issues.

**21.** See 12 O.S.1981 § 681, *supra* note 1, and the cases cited in that footnote.

**22.** See Rule 1.50, *supra* note 18.

**23.** The terms of 12 O.S.1981 § 953 provide in pertinent part:

**24.** Rule 1.11(b)(5), Rules on Perfecting a Civil Appeal, 12 O.S.1981, Ch. 15, App. 2 and *Centorp Corporation v. Gulf Production Corp.,* 183 Okl. 436, 83 P.2d 181, 184 [1938].

**25.** *Commerce Bank of Kansas City v. Chadwell,* Okl., 635 P.2d 609, 610 [1981].

APPENDIX TO THE COURT'S OPINION in No. 64,926

**OKLAHOMA CORPORATION COMMISSION ORDER No. 148243**

Modified prior orders -- allowing only one well per 640-acre section to be drilled to the Mississippi formation -- and created 160-acre drilling and spacing units in designated sections in Garfield County, Oklahoma

**PLAINTIFFS**
Operator and Working Interest Owners who, under the 640-acre spacing order, participated through a joint operating agreement in drilling and completing the Dierkson No. 1 Well as a producing well.

I

Plaintiffs' Claim For Declaratory Judgment

II

Plaintiffs' Quiet Title Claim

**DEFENDANTS**
Lessors/Royalty Owners

**DEFENDANTS**
Top Lessees

**DEFENDANTS/APPELLANTS**
Majority Working Interest Owners in the producing quarter-section unit who participated under the the pooling order

III

Counterclaim for increased revenue as a result of the despacing order

Partial Summary Judgment for the Plaintiffs on certain Quiet Title issues

The trial court determined that:
1. it has jurisdiction over quiet title claims;
2. the Corporation Commission has jurisdiction to establish the effective date of its order;
3. the effective date of the Commission order is October 4, 1982 (the date the U.S. Supreme Court denied the challenge to the Commission's despacing order;
4. on the effective date, there was a temporary cessation of production on lands within the newly created 160-acre units; and
5. the plaintiffs' leases contain clauses which allow additional time to resume drilling after the effective date of the Commission order.

Defendants appeal from order denying summary judgment on their counterclaim

The court determined that:
(1) the "despacing order" did not terminate the rights of working interest owners (who participated in the drilling and completion of the well by bearing their respective expenses and risks) to share in the revenue of the Dierkson No. 1 Well and
(2) the effective date of the Commission order is the same for all purposes (revenue, drilling, etc.)

UNRESOLVED ISSUES

Declaratory Judgment Issue
1. Whether revenue to royalty owners would change as a result of the Commission's despacing order.

Quiet Title Issues
2. Whether defendants' top leases on lands outside the producing quarter-section unit have taken effect;
3. Whether the defendants have interfered with the plaintiffs' efforts to protect their leases that are no longer held by production from the Dierkson No. 1 Well;
4. Whether the plaintiffs' leases covering the undrilled quarter-section units have terminated;
5. Whether plaintiffs have been diligent in their development of the affected lands.